IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA

v.                                   CRIMINAL NO. 2:09-00251

PARAMENA J. SHIKANDA

RESPONSE OF THE UNITED STATES OF AMERICA
TO DEFENDANT PARAMENA J. SHIKANDA'S MOTION TO DISMISS
COUNT EIGHT OF THE INDICTMENT FOR LACK OF VENUE

Comes now the United States of America by Susan M. Robinson, Assistant United States Attorney for the Southern District of West Virginia, responding in opposition to defendant Paramena J. Shikanda's pre-trial motion to dismiss Count Eight of the indictment for lack of venue. As more fully set forth below, the indictment properly alleges venue in the Southern District of West Virginia, and the Court should deny this motion.

I.  Background

Defendant Shikanda is charged in an eight-count indictment as follows:  Count One charges a violation of 18 U.S.C. § 1349 (conspiracy to commit mail fraud and wire fraud); Counts Two through Four charge violations of 18 U.S.C. §§ 1341 and 2 (aiding and abetting mail fraud); Counts Five through Seven charge violations of 18 U.S.C. §§ 1343 and 2 (aiding and abetting wire fraud); and Count Eight charges a violation of 18 U.S.C. § 1956(h) (conspiracy to commit money laundering offenses in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956(a)(2)(B)(i) and 1957). The

offenses arise from a scheme to defraud the State of West Virginia and its vendors, among other states and vendors and a scheme to launder the proceeds of the fraud. As charged in the indictment, in late 2008, unindicted co-conspirator Angella Chegge-Kraszeski (hereinafter "Chegge-Kraszeski") had a passport photo taken in Kenya. Thereafter, conspirators in Kenya sent Chegge-Kraszeski a fraudulent South African passport bearing her photo in the name of "Christina Ann Clay." Subsequently, at the direction of co-conspirators, Chegge-Kraszeski incorporated dummy entities in North Carolina with names similar to legitimate vendors of several states. EIN numbers were acquired from the Internal Revenue Service for the dummy entities. Chegge-Kraszeski also acquired a fraudulent social security card for "Christina Ann Clay." All of these steps were necessary steps taken by the conspirators to further their ultimate goal, that is, to open bank accounts in business names sufficiently close to the names of the targeted vendors so as not to raise suspicion by the states and the banks and to conceal their true identities. Such accounts were opened in both North Carolina and Minnesota.[1]

---

[1]The dummy entities incorporated by Chegge-Kraszeski and fraudulent bank accounts established for those entities are as follows:

1.  Deloite (sic) Consulting Corporation, incorporated on January 6, 2009, TCF Bank, Minnesota;
2.  Unisyss (sic) Corporation, incorporated on January 6, 2009, TCF Bank, Minnesota and Bank of America, North Carolina;

With information acquired by unknown co-conspirators through the internet and otherwise, direct deposit authorization forms were completed for the targeted vendors and mailed to numerous states along with voided starter checks on the fraudulent accounts. The direct deposit authorization forms purported to authorize the states to send payments for goods and services electronically to the targeted vendors. In fact and unknown to the states and their true vendors, the fraudulently submitted forms were intended to and did cause several states to route payments to the fraudulent bank accounts.[2] As a result of the scheme to defraud, in excess of $3,379,000 was fraudulently diverted from the State of West Virginia and other states to accounts controlled by defendants and their co-conspirators.[3] The State of West Virginia sustained the

---

3.   Acenture (sic) incorporated, on January 6, 2009, Wachovia Bank, North Carolina; and

4.   Electronic Data Systems (sic) Inc., incorporated on March 16, 2009, SunTrust Bank, North Carolina.

[2]The WVSAO's direct deposit authorization form was entitled "Company eVendor Agreement." A copy of the fraudulent Deloitte Consulting LLP "Company eVendor Agreement" received by the WVSAO on March 4, 2009, is attached hereto as Exhibit A (FEIN and account numbers redacted for electronic filing).

[3]The diverted amounts are as follows:

1.   TCF Bank account xxxxxx9204 in the name Deloitte Consulting Corporation

| Date | Amount | ACH Deposit From |
| --- | --- | --- |
| 3/23/2009 | $919,916.00 | West Virginia |
| 4/07/2009 | $839,896.58 | Massachusetts |

3

only actual loss as the scheme was discovered by the financial institutions prior to the withdrawal of funds deposited by other states into the fraudulent accounts.

As alleged in the indictment, on March 23, 2009, $919,916 was credited to the fraudulent Deloitte bank account at TCF bank in Minnesota.  The funds were sent via ACH transaction from the State of West Virginia and represented payment intended for the it's legitimate vendor, Deloitte Consulting LLP.  Thereafter, between March 26 and April 1, the $919,916 was laundered from this account by various means, including checks written on the account and made payable to "Christina Ann Clay," which were later cashed or exchanged for cashier's checks payable to other individuals; checks written on the account payable to other individuals; and, large wire transfers to business accounts in the names of "Accenture Global Enterprises Limited" and "SRI International Limited" held at four separate banks in Nairobi, Kenya.  The

| Date | Amount | ACH Deposit From |
|------|--------|------------------|
| 4/22/2009 | $448,140.05 | Massachusetts |
| 6/14/2009 | $301,571.00 | Ohio |

2.  Wachovia Bank acct xxxxxxxxx0811 in the name of Accenture Corporation

| Date | Amount | ACH Deposit From |
|------|--------|------------------|
| 3/23/2009 | $  9,802.80 | Kansas |
| 4/01/2009 | $179,456.40 | Kansas |
| 4/01/2009 | $225,000.00 | Kansas |
| 4/07/2009 | $263,691.00 | Kansas |
| 4/16/2009 | $  9,802.80 | Kansas |
| 4/17/2009 | $181,792.80 | Kansas |

4

documentation provided to TCF Bank for processing the wire transfers to Kenya were fraudulent invoices purportedly for work performed by these entities for Deloitte Consulting Corporation.

The schemers exploited modern technology to steal and launder public funds without ever stepping foot within any of the districts of the victim states, or as to some co-conspirators, without being physically present in the United States. Nevertheless, numerous acts occurred in this district giving rise to venue as to all charged defendants on each count of the indictment including Count Eight. In executing the schemes, known and unknown co-conspirators (aiders and abettors), targeted the State of West Virginia and its vendors through the use of the internet. Conspirators repeatedly accessed a public internet website operated by the West Virginia State Auditor's Office ("WVSAO") on a server located in Charleston, West Virginia, known as VISTA. Conspirators mailed fraudulent documents to and received emails from the WVSAO. Ultimately, conspirators received $919,916 from the State of West Virginia and laundered the funds in various ways. All of these acts were acts in furtherance of both the fraud and the money laundering conspiracy and, as such, defendant Shikanda is properly charged in this district in Count Eight.

## II.  Legal Analysis

### A.  Sufficiency of Indictment

An indictment must be "a plain, concise and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c).  "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  Hamling v. United States, 418 U.S. 87, 117 (1974); United States v. Quinn, 359 F.3d 666, 672 (4th Cir. 2004); United States v. Loayza, 107 F.3d 257, 260 (4th Cir. 1997).  An indictment that merely tracks the statutory language is ordinarily valid.  United States v. American Waste Fibers Co., Inc., 809 F.2d 1044, 1047 (4th Cir. 1987).

The omission in an indictment of an allegation of venue is not fatal.  Rule 7(c) of the Federal Rules of Criminal Procedure does not require that venue be alleged in an indictment, and it has been held that while a defendant has the right to be tried in the proper forum, he has no right to be charged in an indictment with the proper venue.  Carbo v. United States, 314 F.2d 718, 733 (9th Cir. 1963); see also United States v. Votteller, 544 F.2d 1355, 1360-61 (6th Cir. 1976); United States v. Honneus, 508 F.2d 566, 570 (1st Cir. 1974).  When an indictment does properly allege venue, it is premature for a district court to dismiss for improper venue.

United States v. Jefferson, 562 F. Supp. 2d 695 (E.D. Va. 2008);
United States v. Lanza, No. Civ. A. 3:03CR00025, 2006 WL 344955
(W.D. Va. Feb 10, 2006) (citing United States v. Gross, 276 F.2d
816, 819 (2d Cir. 1960)); United States v. Ayeki, 289 F. Supp. 2d
183, 188 (D. Conn. 2003); see also United States v. Bronson, No.
05-CR-714 (NGG) 2007 WL 2455138, at *4 (E.D.N.Y. 2007).

### B. Venue

The Constitution and the federal laws of the United States
grant a defendant in a criminal case the right to be tried in the
judicial district in which the offenses occurred.  United States v.
Griley, 814 F.2d 967, 973 (4th Cir. 1987).  Two provisions in the
United States Constitution address this guarantee. Article III,
Section 2 states: "The Trial of all Crimes . . . shall be held in
the State where the said Crimes shall have been committed."  The
Sixth Amendment amplifies this guarantee and provides: In all
criminal prosecutions, the accused shall enjoy the right to a
speedy and public trial, by an impartial jury of the State and
district wherein the crime shall have been committed. U.S. Const.
amend. VI.  Rule 18 of the Federal Rules of Criminal Procedure also
provides for this guarantee: Except as otherwise permitted by
statute or by these rules, the prosecution shall be had in a
district in which the offense was committed.

In accordance with these constitutional principles, Congress
may prescribe venue requirements for a particular crime. United

States v. Johnson , 510 F.3d 521, 524 (4th Cir. 2007).  If such a statute is enacted by Congress, "'that provision must be honored (assuming, of course, that it satisfies the constitutional minima).'" Id. (quoting United States v. Salinas, 373 F.3d 161,164 (1st Cir. 2004)).  If Congress does not explicitly provide for venue when it enacts a criminal statute, venue is "'to be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" United States v. Cabrales, 524 U.S. 1, 6-7 (1998) (quoting United States v. Anderson, 328 U.S. 699, 703 (1946)).  To make this determination, "a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999) (citations omitted).

An "exception" exists for "continuing offenses" which are begun in one district and completed in another. United States v. Ebersole, 411 F.3d 517, 527 (4th Cir. 2005).  In these circumstances, the continuing offenses statute, 18 U.S.C. § 3237(a), applies. This statute provides: Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which the offense was begun, continued, or completed. 18 U.S.C. § 3237(a) (1988).

The constitutional and statutory provisions protect defendants from the inconvenience and prejudice of being prosecuted in a jurisdiction bearing no connection to their offenses.  Venue rules do not, however, "require the government to prosecute in any particular district when venue lies in multiple locations." United States v. Smith, 452 F.3d 323, 334 (4th Cir. 2006).

> Where venue requirements are met, the prosecution may proceed in that district, notwithstanding the possibility that the gravamen of the wrongdoing took place elsewhere.  Such a rule is both even-handed and practical; there is no unfairness in prosecuting a defendant in a district in which he has committed a crime, and there are good reasons to avoid an indeterminate inquiry into the relative seriousness of multi-district misconduct.

Id.

Because venue is not an element of an offense, the United States may establish venue by a preponderance of the evidence. United States v. Johnson , 510 F.3d 521 (4th Cir. 2007); Ebersole, 411 F.3d at 524; Griley, 814 F.2d at 973.  Moreover, the United States may rely on an overt act not alleged in the indictment as the basis for venue.  United States v. Schwartz, 535 F.2d 160, 164-65 (2d Cir. 1976).

## C.  Money Laundering Conspiracy Venue

In applying these principles to this case, the Court must look to the crime charged. A venue provision was added by Congress to the money laundering statute in October 2001 as part of the U.S.

Patriot Act, Pub. L. 107-56, § 1004, 115 Stat. 272, 392. This
provision provides in relevant part:

> (i) Venue.--(1) Except as provided in paragraph (2), a
> prosecution for an offense under this section or section
> 1957 may be brought in--
>
>> (A) any district in which the financial or monetary
>> transaction is conducted; or
>> (B) any district where a prosecution for the
>> underlying specified unlawful activity could be
>> brought, if the defendant participated in the
>> transfer of the proceeds of the specified unlawful
>> activity from that district to the district where
>> the financial or monetary transaction is conducted.
>
> (2) A prosecution for an attempt or conspiracy offense
> under this section or section 1957 may be brought in the
> district where venue would lie for the completed offense
> under paragraph (1), or in any other district where an
> act in furtherance of the attempt or conspiracy took
> place.

18 U.S.C. § 1956(i).  In accordance with this statute, venue on
Count Eight lies in West Virginia if the underlying crime was
committed in West Virginia and defendant Shikanda participated in
transferring the proceeds to Minnesota, or if acts in furtherance
of the conspiracy were committed in West Virginia.  The indictment
in the instant case alleges the existence of both prongs as a basis
for venue.  Accordingly, the United States submits defendant's
motion should be summarily denied. United States v. Jefferson, 562
F. Supp. 2d. 695 (E.D. Va. 2008) (to withstand a motion to dismiss
charges alleging violations of 18 U.S.C. § 1957, for improper
venue, the indictment need only track the language of 18 U.S.C.
§ 1956(i) alleging that the defendant participated in moving the

money from the district where the SUA occurred); <u>see also</u> cases cited herein at p.6.

Defendant Shikanda nevertheless argues that venue is inappropriate in West Virginia as all of the money laundering activity occurred in Minnesota, and that he, in fact, did not participate in transferring money from West Virginia to Minnesota. Defendant likewise argues that no act in furtherance of the conspiracy took place in West Virginia.  The United States will consider each of these arguments in turn.

1. <u>18 U.S.C. § 1956(i)(1)(B)</u>

Counts Two - Seven charge defendant Shikanda with aiding and abetting defendants Ochenge and Otiso, unindicted co-schemer Angella Chegge-Kraszeski, and others known and unknown with mail and wire fraud.[4]  The indictment further alleges that defendant Shikanda knowingly and intentionally participated in the underlying fraud scheme which caused the proceeds of the fraud to be sent to Minnesota.  Indictment Count Eight, paragraph 3.  The indictment alleges that in furtherance of the fraud that defendants and co-schemers had numerous contacts with the State of West Virginia which caused the fraud proceeds to be sent to Minnesota. Co-schemers logged on the State of West Virginia's website on multiple

---

[4]The United States may prosecute the "continuing offense" of wire (mail) fraud in any district in which the transmittals that "'caused the fraud to bear fruit'" were sent or received. <u>Ebersole</u>, 411 F.3d at 527 (citation omitted).

occasions to acquire information about vendors, obtain "Company e-Vendor Agreement" forms, view remittance detail, and change email addresses to email accounts created to receive payment notifications from the State of West Virginia. Indictment Count One, paragraphs 31, 35, 36, 40, and Counts Two - Eight. Three different fraudulent "Company eVendor Agreement" forms and voided starter checks on the fraudulent accounts were mailed separately to the WVSAO in Charleston, West Virginia. Indictment Count One paragraphs 35, 38, 61; Counts Two - Four; and Count Eight, paragraphs 1, 4, 6. Emails were sent from the WVSAO confirming the transmission of a payment of $919,916 to Deloitte Consulting LLP to two email accounts set up by the co-schemers to receive such communications. Indictment Count One, paragraph 46, Counts Six - Seven, and Count Eight, paragraph 1, 4. As a result of the fraud, $919,916 was sent via ACH transaction to the fraudulent Deloitte bank account at TCF Bank in Minnesota. Indictment Count One, paragraph 45, Count Five; and Count Eight, paragraphs 1, 4, 6-7.

Whether defendant Shikanda actually mailed the fraudulent direct deposit form to the WVSAO which caused the transfer of the funds to Minnesota, he nevertheless is responsible for those acts and thus "participated" in transferring the money to Minnesota where it was laundered. United States v. Perkal, 530 F.2d 604 (4th Cir. 1975). It is well-settled in the Fourth Circuit that as long as one participant in a fraudulent scheme causes a use of the mails

(wires) in execution of the fraud, all other knowing participants in the scheme are legally liable for that act whether the indictment charges a conspiracy or not.  Id.  Thus, a defendant need not have conducted or caused the use of the mails (wires) or even have knowledge of the actual act but merely had to have knowingly and intentionally participated in the fraud scheme.  Id., accord United States v. Toney, 598 F.2d 1349, 1355 (5th Cir. 1979); see also United States v. Manion, 339 F.3d 1153, 1156 (9th Cir.) 2002) ("We note that a 'knowing participant' in a fraudulent scheme may be held liable both for his or her own acts of mail or wire fraud and be held vicariously liable for the acts of co-schemers) (citations omitted).  Further, a defendant need not have actual knowledge of the use of the mails (wires) but rather the government need only show that use of the mails was reasonably foreseeable. United States v. Edwards, 188 F.3d 230 (4th Cir. 1999).  Thus, venue is properly alleged under 18 U.S.C. § 1956(i)(1)(B).

### 2.   18 U.S.C. § 1956(i)(2)

An additional basis for venue is properly stated in this case under the "acts in furtherance" prong of the venue provision.  In Whitfield v. United States, 543 U.S. 209, 218 (2005) the Supreme Court held that a conviction for money laundering conspiracy does not require proof of an overt act.  In so holding, the Supreme Court discussed § 1956(i) and stated that "this Court has long held that venue is proper in any district in which an overt act in

13

furtherance of the conspiracy was committed, even where an overt act is not a required element . . . . " The money laundering venue provision and <u>Whitfield</u> reaffirm long standing traditional conspiracy venue rules. <u>Hyde v. United States</u>, 225 U.S. 347, 356-67 (1912) (venue is proper in any district in which any conspirator performs an overt act in furtherance of the conspiracy or performs acts that effectuate the object of the conspiracy, even though there is no evidence the particular defendant ever entered that district or that the conspiracy was formed there). <u>United States v. Rodriquez-Moreno</u>, 526 U.S. 275, 279 (1999) (venue is proper for a conspiracy where ever the agreement was made or where any conspirator carried out overt acts).

The Fourth Circuit likewise recognizes that "in a conspiracy charge, venue is proper for all defendants wherever the agreement was made or wherever any overt act in furtherance of the conspiracy transpires." <u>United States v. Bowens</u>, 224 F.3d 302, 311 n.4 (4th Cir. 2000); <u>United States v. Gilliam</u>, 975 F.2d 1050, 1057 (4th Cir. 1992); <u>United States v. Smith</u>, 452 F.3d 323, 334-36 (4th Cir. 2006); <u>United States v. Al-Talib</u>, 55 F.3d 923, 928-29 (4th Cir. 1995); <u>United States v. Barfield</u>, 969 F.2d 1554, 1557 (4th Cir. 1992); <u>United States v. Martinez</u>, 901 F.2d 374, 376 (4th Cir. 1990). The United States is not required to show that all of the members of a conspiracy committed an overt act within the district of prosecution. So long as one conspirator committed an overt act

within the district, venue is established as to all members of the conspiracy.  Al-Talib, 55 F.3d at 928 (acts of one co-conspirator can be attributed to all members of conspiracy); United States v. Bolden, 305 F. App'x 83, 84 (4th Cir. 2008) (unpublished) ("the law permits using a conspirator's acts within a district to support venue in that district for the trial of any co-conspirators.")

        Moreover, the acts need not be substantial and could be a simple as telephone calls or other electronic transmission to or from the district. See, e.g. Al-Talib 55 F.3d at 928; United States v. Johnson, 510 F.3d 521, 526-27 (4th Cir. 2007).  "This Court has repeatedly held that the overt act of one conspirator in a district suffices to establish venue for all other co-conspirators in that district. The overt act or acts necessary to support venue in a conspiracy case do not have to be substantial." United States v. Mitchell, 70 F. App'x 707, 2003 WL 2175739 (4th Cir. 2003) (unpublished) and cases cited therein at 711.  It is also the case that a defendant may not avail himself of modern technology to avoid venue. United States v. Rommy, 506 F.3d 108, 122 (2d Cir. 2007) ("That an instrument of commerce or technology permits the conspirator to communicate with his listener while physically removed from him does not alter the fact that the conspirator has committed an overt act at the recipient's location."), cert. denied, 128 S. Ct. 1681 (2008).  Finally, the United States is not required to establish that the defendant had knowledge of contacts

in the State of West Virginia to establish venue. Cf. Johnson, 510 F.3d at 526-27. In Johnson, the Fourth Circuit decided a case involving the application of venue pursuant to a specific venue provision applicable to SEC laws. Arguably more stringent than the venue provision currently before this Court, the SEC provision provided that venue lay in any district where any "act or transaction constituting the violation" occurred. Id. In Johnson, the SEC, in accordance with its practice, electronically transmitted a fraudulent form which defendant's company submitted to SEC in Washington, D.C. to its server in the district of prosecution where it was stored and made available for public viewing. The court held that this act was sufficient to establish venue in the district. In so ruling, the court additionally held that there was no requirement under the particular venue statute that the defendant reasonably foresee that the SEC would transmit the form to that district. Id.

Significantly, the case before this Court is not a case where the money laundering scheme was hatched and commenced only after the underlying criminal activity was completed. Rather, the fraud and money laundering schemes overlapped.[5] Acts in furtherance of

---

[5] The fraud also continued as the money laundering was ongoing. Subsequent to the transmission by the State of West Virginia to send the $919,916 to the Deloitte account, a completed phase of the fraud scheme, the Commonwealth of Massachusetts and the State of Ohio sent payments to the same fraudulent TCF Bank account for Deloitte Consulting LLP which was also a vendor for both of these states, as well as, West Virginia. Subsequent acts of fraud ,among

16

the fraud also acted as acts in furtherance of the money laundering conspiracy to conceal and disguise the nature, location, source, ownership and control of the fraud proceeds.  In fact, the first of such overlapping fraud and money laundering conspiracy was likely the provision of the fraudulent Clay identity by conspirators in Kenya to unindicted co-conspirator Chegge-Kraszeski.   The overlapping acts of fraud and concealment money laundering continued to the creation of dummy entities by Chegge-Kraszeski registered in the false name and the creation of the business bank accounts with the fraudulent corporate records and the false Clay identity.

Acts occurring in West Virginia which both furthered the fraud and the attempt and conspiracy to launder money include the following:  (1) the mailing of three "Company eVendor Agreement" forms to the WVSAO, including the form purportedly submitted by the true vendor Deloitte Consulting, LLP (Exhibit A); (2) accesses to the WVSAO VISTA website via the internet to change email accounts; (3) the receipt of two emails from the WVSAO advising that payment had been issued to the fraudulent Deloitte bank account at TCF

---

others, included co-conspirators attempts to convince TCF Bank that the payments were legitimate by sending a fraudulent contract between Deloitte and the Commonwealth of Massachusetts to TCF Bank, and ongoing efforts to defraud the State of West Virginia by sending a new Company eVendor Agreement form for Unisys Corporation to WVSAO directing the state to send funds to a fraudulent Unysis bank account established at TCF Bank in Minnesota.

Bank; and, (4) the electronic transmission of instructions to wire $919,916 in funds to the fraudulent Deloitte bank account at TCF Bank.  See Indictment Count One, paragraphs 38-40 and Count Eight, paragraphs 1, 4-7.

Importantly, the fraudulent direct deposit forms resulted in the State of West Virginia taking at least two actions critical to both the fraud and the money laundering.  First based on the password and access user name provided on the form, the  WVSAO set up an account that gave the conspirators "expanded remittance information" and allowed them to access their account via the internet.  (Exhibit A).  Secondly, the form caused the WVSAO to change the method of payment for its true vendor which had been by regular mail to the bank account provided on the form, that is the fraudulent account established at TCF Bank.  Significantly, the direct deposit authorization forms did not direct the money to accounts held by the defendants and co-conspirators in their own names but rather to accounts they created with dummy corporate documentation registered in a false name and address, and which accounts were opened with a fraudulent South African passport. Moreover, conspirators also obtained email accounts which looked as if they were for Deloitte employees but were in fact email accounts set up by the conspirators.  Once account access was established on VISTA, conspirators logged on and changed email accounts.  Thus, once payment was transmitted to what the State of West Virginia

believed was its true vendor Deloitte, payment notification was sent to the email accounts established by the conspirators. These emails served to alert co-conspirators to the fact that the funds were in transmission to the fraudulent accounts, thereby enabling them and defendant Shikanda to prepare to launder the money as soon as the funds were credited to the fraudulent account. These aforementioned acts occurring in West Virginia were certainly acts in furtherance of the money laundering conspiracy and establish venue in this district.

The United States submits that a decision from the Eastern District of Virginia being both factually similar to the case before this Court and considered post enactment of 18 U.S.C. § 1956(i) and <u>Whitfield</u>, provides the correct analysis of the application of the "acts in furtherance" prong of the venue statute. <u>United States v. Lanza</u>, No. Civ. A. 3:03CR00025, 2006 WL 344955 (W.D. Va. Feb. 10, 2006). In <u>Lanza</u>, the United States brought securities, wire and mail fraud charges against two defendants, who appear to have been known only by the aliases they used, in a scheme to defraud investors, including investors in Virginia.  The investor's money was deposited into an account in New York in the name "Oppenheimer & Co.," a name similar but unrelated to any legitimate securities firm.  Once the funds were sent to New York and deposited into the Oppenheimer account, checks were drafted on the account and laundered through transactions

19

conducted only in New York.  The defendants before the court on a motion to dismiss for lack of venue, Lanza and Laferrara, were charged in the Eastern District of Virginia with conspiracy to launder money in violation of 18 U.S.C. §§ 1956 and 1957.  Lanza and Laferrara were not charged in the underlying crimes,[6] were never alleged to have set foot in Virginia nor were they alleged to have conducted any act in furtherance of the money laundering conspiracy in Virginia.  Rather, the indictment alleged that the unknown individuals (not Lanza or Laferrara) conducted acts in furtherance of the conspiracy in opening the "Oppenheimer" accounts and in making calls to investors in Virginia inducing them to send money payable to "Oppenheimer."

Applying the money laundering venue provision and traditional venue conspiracy concepts, the district court found that the co-conspirators' calls to Lynchburg were sufficient to establish venue against Lanza and Laferrara.  In so ruling, the court had no difficulty accepting the proposition that "inducing the victims to send checks to a fictitious entity's bank account, registered under false names, [could] easily be seen as a first step in a money laundering scheme," further recognizing that it was irrelevant that the defendants' themselves "did not do the inducing. " Lanza at *4.

---

[6]Only in this respect does the case differ as defendant Shikanda is, in fact, charged in the underlying fraud scheme and alleged to have participated in transferring the proceeds to Minnesota. See discussion herein at pp. 11-13.

As demonstrated in Lanza, transactions supporting the underlying fraud may also constitute acts of money laundering. Lanza at *3 (citing United States v. Omoruyi, 260 F.3d 291, 295-96 (3d Cir. 2001) (depositing funds in an account opened with a false name and using a false name to withdraw the funds both furthered the underlying mail fraud and demonstrated the intent to conceal the nature, source, ownership and control of the proceeds of the mail fraud.)  The Fourth Circuit is in accord.  United States v. Bolden, 325 F.3d 471, 489-90 (4th Cir. 2003) (use of a sham corporation to conceal dealings with a "related party" involved transactions that both promoted the Medicaid fraud scheme and the money laundering scheme by concealing the ownership and source of the proceeds of the fraud); Cf. Prosper v. United States, 218 F.3d 883, 884 (8th Cir. 2000)(finding that the obtaining of fraudulently acquired funds was one of the stages in a conspiracy to commit money laundering); United States v. Tibbs, 225 F.3d 665, No. 99-30095, 2000 WL 732927, at *3 (9th Cir. June 5, 2000) (unpublished) (telephone calls, mail, and wire transmissions used by participants in the scheme to convince victims to invest in the scheme were overt acts in furtherance of money laundering).

In support of his argument, defendant cites to United States v. Cabrales, 524 U.S. 1 (1998), a case which differs in very important respects from the case before this Court. First, Cabrales was decided prior to the enactment of 18 U.S.C. § 1956(i).

Additionally, unlike defendant Shikanda, the defendant in <u>Cabrales</u> was not charged with participation in the underlying crime and the charges at issue were substantive money laundering offenses not money laundering conspiracy.[7]   In <u>Cabrales</u>, an indictment was returned in the Western District of Missouri charging defendant Cabrales with money laundering that occurred entirely in Florida. The money laundered was generated from a drug conspiracy occurring in Missouri.   The Eighth Circuit affirmed the district court's dismissal of the two money laundering counts for improper venue in Missouri.   The Supreme Court affirmed:

> The laundering alleged in the indictment occurred entirely in Florida.   The currency purportedly laundered derived from the unlawful distribution of cocaine in Missouri. The defendant, respondent Vickie S. Cabrales, is not alleged to have transported funds from Missouri to Florida.   Nor is she charged, in the counts before us, with participation in the Missouri cocaine distribution that generated the funds in question.

<u>Id.</u> at 3-4, 7.   The Supreme Court determined that venue was not proper in Missouri because defendant's money laundering activities occurred after the fact of a drug conspiracy offense began and was completed by others.   In <u>Cabrales</u>, the Supreme Court explicitly distinguished conspiracy cases stating: "[n]otably, the counts at

---

[7]Where venue may be inappropriate for a substantive charge, it may be wholly appropriate in a conspiracy case.  <u>Cf.</u> <u>United States v. Ebert</u>, 178 F.3d 1287, No. 96-4871, 1999 WL 261590, at *33 (4th Cir. May 3, 1999) (unpublished) <u>opinion amended on denial of reh'q</u>, 188 F.3d 504 (4th Cir. July 9, 1999) (unpublished).

issue do not charge Cabrales with conspiracy; they do not link her to, or assert her responsibility for, acts done by others." Id. at 7. Cabrales engaged in activity "alone, untied to others." Id. at 8.

Although not cited by defendant, two cases in the Fourth Circuit follow Cabrales, but are likewise distinguishable from the instant case in the same important respects. United States v. Villarini, 238 F.3d 530, 533-34 (4th Cir. 2001); United States v. Stewart, 256 F.3d 231 (4th Cir. 2001). As demonstrated in Villarini, when a specific venue provision is nonexistent, Cabrales and its progeny distinguish between "conduct elements" (which support venue) and "circumstance elements" (which do not support venue). See United States v.Rodriguez-Moreno, 526 U.S. 275 (1999). Thus, in Villarini, the court concluded that venue did not exist for money laundering in Virginia over a defendant who embezzled funds in Virginia and then moved to Florida where she later laundered the funds. In so ruling the Court applied Cabrales holding that venue is "proper only in a district in which an essential conduct element of the offense took place . . . ."

Villarini, 238 F.3d at 533-34.

In the Stewart case, proceeds of the drug sales were wired from Virginia to California. In California, the funds were used in ways which were alleged to constitute money laundering. Two defendants - both charged in the Eastern District of Virginia -

23

moved to dismiss the money laundering counts based on improper venue. One defendant, Stewart, was convicted only on substantive money laundering charges and was acquitted of the conspiracy. Applying Cabrales, the Fourth Circuit agreed with Stewart vacating his money laundering convictions for improper venue.  The Court ruled that venue was only proper in California for defendant Stewart, who received Western Union transfers in California but played no part in sending them from Virginia. In so ruling the court stated: "[A]bsent charges of aiding and abetting or a showing that Stewart caused or participated in the overt acts of the depositors who were located in the Eastern District of Virginia, venue is improper in that district." Stewart, 256 F.3d at 241. Notably, the Fourth Circuit rejected Livingston's venue argument, finding that his "acquisition of the funds in the Eastern District of Virginia and . . . subsequent interstate transportation of the funds from the Eastern District of Virginia to Los Angeles" brought his conduct within the exception delineated in Cabrales. Id. at 243. As previously noted, the money laundering venue provision was added in October 2001. Both Villarini and Stewart were decided prior to the enactment of this provision.  In light of the facts of this case, which involve a money laundering conspiracy, not substantive money laundering offenses, and the venue provision which provides for venue in "any district where an act in

24

furtherance of the conspiracy" took place any reliance upon Cabrales, Villarini or Stewart would be misplaced.

As set forth above, in the present case the money laundering conspiracy actually began while the underlying fraud scheme was ongoing. Acts that furthered the underlying scheme also furthered the money laundering conspiracy to disguise and conceal the proceeds of the fraud scheme. Venue properly exists in the Southern District of West Virginia under the provisions of 18 U.S.C. § 1956(i).

## III.  Conclusion

Based upon the foregoing, the United States submits that this Court should deny defendant Shikanda's motion to dismiss Count Eight of the indictment.

Respectfully submitted,

CHARLES T. MILLER
United States Attorney

By:
/s/SUSAN M. ROBINSON
SUSAN M. ROBINSON
Assistant U.S. Attorney
WV Bar No.  5169
Assistant U.S. Attorney
P.O. Box 1713
Charleston, WV  25326
Telephone:  (304) 345-2200
Fax:  (304) 347-5706
E-mail:  susan.robinson3@usdoj.gov

## CERTIFICATE OF SERVICE

It is hereby certified that service of the foregoing "Response of the United States of America to the Defendant Paramena J. Shikanda's Motion to Dismiss Count Eight of Indictment for Lack of Venue" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing on this 4th day of February, 2010, to:

        Gary A. Collias, Esquire
        P.O. Box 70007
        Charleston, WV  25301-0007


        /s/SUSAN M. ROBINSON
        SUSAN M. ROBINSON
        Assistant U.S. Attorney
        WV Bar No.  5169
        Assistant U.S. Attorney
        P.O. Box 1713
        Charleston, WV  25326
        Telephone:  (304) 345-2200
        Fax:  (304) 347-5706
        E-mail:  susan.robinson3@usdoj.gov