IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

vs.                                        Criminal No. 2:09-00251

PARAMENA J. SHIKANDA.

## SENTENCING MEMORANDUM OF
## DEFENDANT PARAMENA JOSEPH SHIKANDA

Now comes the Defendant Paramena Joseph Shikanda by undersigned

counsel and submits this Sentencing Memorandum for consideration of the

Court in sentencing.

The Defendant has raised numerous objections to the presentence report.

However, only three of those objections, in the view of the Defendant, need to be

ruled upon by the Court.

### I.    OBJECTIONS

A.    First, the Defendant has objected to receiving a 2 point increase as a

result of the specific offense characteristic of the laundering in this case being

sophisticated.  The Defendant Shikanda does not dispute that the laundering

scheme was sophisticated.  However, Defendant Shikanda does dispute that this

two level enhancement can be applied to him since his involvement in the scheme was not in any way sophisticated and that all he did was introduce other defendants to the lady he knew who worked at TCF Bank.  In so doing, he facilitated the transfer of money to Kenya, but did not otherwise actively participate in the scheme.  Accordingly, it is the view of the Defendant Shikanda that he should not receive this 2 point enhancement.

  B.  Secondly, the Defendant has objected that the total amount of loss of $919,916, which the probation officer has recommended.  This amount of calculated loss is based upon wire transfers that took place on March 26, March 30, March 31 and April 1, 2009.  The Defendant Shikanda was not present on April 1, 2009 when the transfer of funds took place. On April 1, there were transfers in the amount of $87,686, $85,498, $89,798 and $42,747 for a total amount transferred of $305,729.  Defendant Shikanda had no prior or contemporaneous knowledge of the fact that these transfers were going to take place on April 1, had no involvement in those transfers and did not become aware that those transfers had taken place until many months later after he was arrested.  Accordingly, the transfer of $305,729 that took place on April 1, 2009 was not in any way foreseeable to Defendant Shikanda and he should not be

2

held accountable for it.   If the total amount of $305,729 is excluded from the

calculation of loss for purposes of calculating Defendant Shikanda's guidelines,

this will not reduce his recommended guideline sentence since the amount of

loss will still be between $400,000 and 1 million dollars.  However, the reduction

by $305,729 will reduce the amount of restitution for which Defendant Shikanda

is responsible to $614,187 minus any amounts recovered by to the State of West

Virginia.

      C.    Defendant Shikanda has objected to the criminal conviction set forth

and described in Paragraph 100 of the presentence report that involves a

conviction for DUI and for which the probation officer claims the defendant

received a 90-day jail sentence.  Attached hereto as Exhibit A is a copy of the

sentencing order from the District Court, 4th Judicial District of the County of

Hennepin of the State of Minnesota which indicates that on May 13, 2009,

Defendant Shikanda was sentenced to 365 days in the workhouse of which 275

days were suspended and against which he was given one day credit for time

served.  This leaves 89 days to be served.  The order, however, goes on to

indicate that the Defendant is sentenced after 44 days of prison to serve the

remainder of the sentence on electronic home monitoring.  Therefore, it is clear

from the sentencing order itself  that the Court actually sentenced the Defendant

to incarceration for the one day credit for time served plus 44 additional days for

a total sentence of 45 days.  Accordingly, the Defendant should only receive 1

criminal history point for his conviction since it is a sentence in a prison of less

than 60 days.

D.    With regard to all other objections of the Defendant in the

presentence report, the Defendant has objected to them because, in his view,

they are not factually accurate.  However, it does not appear to undersigned

counsel that it is necessary for the Court to attempt to resolve each and every

one of these objections.  Furthermore, it appears likely to undersigned counsel

that there is no one narrative version of events in this case upon which all

defendants can agree or which can be clearly established by the evidence.   For

this reason, Defendant Shikanda, while pointing out various factual inaccuracies

in the report, does not seek to have the Court actually rule on these matters.

E.    As calculated by the probation officer, the Defendant has a final

offense level of 21 with his criminal history category of III which yields

sentencing guidelines of 46 to 57 months.  If the Court sustains the Defendant's

objection with regard to the sophisticated laundering, this recommended

guideline level will be reduced by 2 levels and the sentencing range will become 37 to 46 months.

## II. VARIANCE

The Defendant Shikanda requests that the Court vary downward from the advisory guideline range ultimately arrived at.  In the view of the Defendant, the sentencing range of 46 to 57 months is unduly harsh in light of all the facts and circumstances in this case.

It should be pointed out that the Defendant Shikanda was not in any way involved in or knowledgeable about the actual source of the money in this case. At the time Defendant Shikanda became involved in this criminal enterprise, the money had already been stolen from the State of West Virginia and arrived in Minnesota and Defendant Shikanda had no involvement in that theft and did not even know where the money had come from.  Defendant Shikanda did, however, know the money was the result of some sort of criminal enterprise or activity.

Defendant Shikanda's total involvement in this case was taking other defendants to TCF Bank and introducing them to a lady he knew at the bank by the name of Tymika Crawford.  This was done for the purpose of making it a

little easier for the other individuals to convince Tymika Crawford to do the

wire transfers to Kenya.   However, Tymika Crawford, in her debriefing of April

30, 2010, indicated that she was a little suspicious of the transactions and for that

reason, "she did bring up these wire transfers with her boss.  Her boss told her

that as long as the client has the proper documentation, they would send the

wire transfers through."  ( Paragraph No. 8 of April 30, 2010 debriefing of

Tymika Crawford.)

Therefore, it appears from the interview of Tymika Crawford that the

assistance of Defendant Shikanda in introducing the other conspirators to Ms.

Crawford was not even necessary for the completion of this scheme, since all the

bank cared about was that the documents appeared to be in order, which, of

course, they did.

Furthermore, the assistance of Shikanda in setting up transfers was so

casual that Angela Chegge-Kraszeski indicated in her debriefing of July 29, 2009

that when she first met Shikanda at the bank, she thought that "Shikanda was

along for the ride."  (July 29, 2009 debriefing of Angela Chegge-Kraszeski at

Paragraph 53).   It was not obvious to Chegge-Kraszeski at that time that

Shikanda had any other involvement.  Defendant Shikanda does not dispute

that he became aware that the money involved in this case that was being transferred to Kenya was the product of a criminal scheme and that his assistance in wiring that money to Kenya was a crime.   However, it is likewise important that Shikanda's only involvement was making the introductions at the bank in order to facilitate the transfers.  Furthermore, after the transfers, Defendant Shikanda attempted to obtain money for his assistance and was ultimately reduced to begging defendants Otiso and Ochenge for some money. He ultimately received five or six thousand dollars from Defendant Gunga in return for making introductions at the bank for the other conspirators.

It is also of note that in the week before trial, Defendant Otiso reneged on his plea agreement and refused to enter a plea of guilty.  Defendants Gunga and Ochenge likewise were prepared to go to trial.  It was only after Defendant Shikanda entered into a plea agreement that this "log jam" of defendants  was broken and Defendants Otiso, Ochenge  and Gunga decided to enter pleas of guilty.  Finally, the Court should be aware that Defendant Shikanda has met with attorneys for the Government and law enforcement agents several times in this case and has been forthright and truthful with them and provided valuable information with regard to this conspiracy and other matters.

In light of all the above, the Defendant Shikanda moves the Court to vary downward from the sentencing guidelines in this case to reflect the Defendant's lesser culpability in this matter. A sentence of 46 to 57 months as suggested by the advisory guidelines is simply is too long a sentence for the minimum involvement of the Defendant in this case.

Finally, of interest is the fact that if the Defendant Shikanda had actually stolen the money in this case as a result of some sort of wire or mail fraud scheme and his guidelines were calculated pursuant to Sentencing Guideline 2B1.1, the Defendant's base offense level would have been 21. After receiving 3 points for acceptance of responsibility, his final offense level would have been 18 which means that since he is in criminal history category III, his ultimate sentencing range would be 33 to 41 months. Defense counsel suggests to the Court that it makes no sense that individuals should receive a longer sentence for a minor role in a money laundering scheme than they would receive if they actually had participated in the theft of the money itself. Money laundering and the transfer of stolen money is obviously a serious criminal offense, but it can't be more serious than the actual stealing of the money in the first place. To the extent that the sentencing guidelines punish money laundering more

8

seriously and more severely than they do the underlying crime, undersigned counsel suggests the guidelines are irrational, unjust, unfair and unreasonable.

For all the reasons set forth above, Defendant Shikanda moves the Court to vary downward with regard to his sentence in this case to arrive at a just sentence reflecting his true and actual culpability in the money laundering scheme involved in this case.

Respectfully submitted,

/s/ Gary A. Collias
GARY A. COLLIAS
Attorney at Law
122 Capitol Street, Suite 300
P.O. Box 70007
Charleston, WV 25301-0007
Telephone: (304) 344-3652
*Counsel for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

vs.                                        Criminal No. 2:09-00251

PARAMENA J. SHIKANDA.

## CERTIFICATE OF SERVICE

I, hereby certify that on this the 16th day of August, 2010, I filed the foregoing document with the Court, using CM/ECF which will send notification of such filing to the following CM/ECF participants:

Susan M. Robinson *(electronically filed)*
Asst. U. S. Attorney
U.S. Attorney's Office
P.O. Box 1713
Charleston, WV 25326
*Counsel for Plaintiff*

/s/ Gary A. Collias
Gary A. Collias, Esq.
Attorney at Law
122 Capitol St., Suite 300
P.O. Box 70007
Charleston, WV 25301-0007
Telephone: (304) 344-3653
Fax: (304) 345-3083
E-mail: gacollias@colliaslaw.com.
*Counsel for Defendant*