IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON


UNITED STATES OF AMERICA

v.                                    CRIMINAL NO. 2:09-00251

PARAMENA J. SHIKANDA


SENTENCING MEMORANDUM

Comes now the United States of America, by Susan M. Robinson, Assistant United States Attorney for the Southern District of West Virginia, and submits this memorandum in support of its position regarding sentencing in the instant case and in response to defendant Shikanda's sentencing memorandum.

Introduction

On May 20, 2010, defendant pled guilty pursuant to a written plea agreement with the United States to conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) as charged in Count Eight of the indictment. The presentence investigation report utilizing the November 1, 2009 edition of the guidelines, calculated defendant's advisory guideline range as follows: Base offense level of 22 which consists of 8 levels plus 14 for the value of the laundered funds determined to be $919,916 (USSG §2S1.1(a)(2). A two-level enhancement was applied as defendant's offense of conviction was a violation of 18 U.S.C. 1956 (USSG §2S1.1(b)(2)(B)). An enhancement of two-levels was applied as the offense constituted sophisticated money laundering (USSG

§ 2S1.1(b)(3)) . As a result of defendant's minor role in the offense a two-level reduction was granted (USSG §3B1.2(b)). The calculations resulted in an adjusted offense level of 24. The Probation Department recommended a two level decrease for acceptance of responsibility pursuant to USSG §3E1.1(a) which, with a motion from the United States for an additional level, provides a total offense level of 21.[1] Based upon the total offense level of 21 and a criminal history category of III, defendant's advisory guideline imprisonment range is 46 to 57 months.

Defendant makes three objections to the presentence report and several general factual objections[2]. The only objection made by defendant which would affect his guideline calculation is his objection to the application of the sophisticated money laundering enhancement. Additionally, defendant claims value of the laundered funds was improperly calculated as he should only be responsible for the loss resulting from the laundering of funds through wire

_____

[1] Defendant stipulated in his plea agreement with the United States that his guideline calculation included a base offense level of 8 plus 14, representing a value of laundered funds between $400,000 and $1 million, and an addition of 2 levels for a conviction under 18 U.S.C. § 1956. There was no agreement regarding the sophisticated laundering proceeds nor role in the offense.

[2]As to these general matters, the burden is upon the defendant to show the inaccuracy or unreliability of the presentence report. "Without an affirmative showing the information is inaccurate, the court is 'free to adopt the findings of the [presentence report] without more specific inquiry or explanation.'" United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990)(quoting United States v. Mueller, 902 F.2d 336, 346 (4th Cir. 1990).

transfers in which he directly participated.   While as set forth below, defendants argument is not legally or factually supportable, even if the Court were to rule in defendant's favor, as defendant concedes, the value would still fall in the range of $400,000 and $1 million and the guideline calculation would not change. Defendant also objects to a point added to his criminal history. A finding in defendant's favor on this objection likewise would not change his criminal history category or affect his advisory guideline range.   Finally, defendant requests a variance from the advisory guideline range which the United States opposes.

The presentence report sets out the offense conduct in detail. The United States will discuss the offense conduct with specificity where necessary in addressing defendant's arguments.

<u>Discussion</u>

A.   Sophisticated Laundering Enhancement

United States Sentencing Guideline §2S1.1(b)(3) provides that if "(A) subsection (b)(2)(B) applies; and(B)the offense involved sophisticated laundering, increase by 2 levels." As the commentary notes: "'sophisticated laundering' means complex or intricate offense conduct pertaining to the execution or concealment of the 18 U.S.C. 1956 offense." USSG §2S1.1, comment. n.5. It is further stated that such conduct "typically involves the use of- (i)fictitious entities; (ii) shell corporations;(iii) two or more levels(i.e. layering) of transactions,...; or (iv) offshore

3

financial accounts." Id.   The enhancement recognizes that additional punishment is warranted because such offenses are more difficult and time consuming for law enforcement to detect and track than less sophisticated laundering.  USSG App.C.; United States v. Pizano, 421 F.3d 707, 728 (8th Cir. 2005).

Defendant concedes in the instant case that the laundering scheme was sophisticated and the evidence clearly supports this finding.  As the presentence report demonstrates, the laundering scheme involved fictitious entities, layering of transaction through multiple accounts and the use of multiple cashiers checks, and the laundering of funds to offshore accounts in Kenya at different banks held in the names of fictitious entities. Nevertheless, defendant argues that his role in the scheme was not sophisticated and thus, this enhancement should not apply. Defendants argument is without merit.  This section accounts for the offense conduct itself not a particular defendant's role in the offense. As previously stated, the calculated advisory guideline range reflects a two-level reduction for defendant's minor role in the offense.

Defendant Shikanda is responsible for any sophisticated laundering in which he engaged, as well as, any sophisticated laundering of his co-defendants which was reasonably foreseeable to him.  See Pizano, 421 F.3d at 733-734 (district court erred in failing to consider whether layering activities of co-defendants

4

which resulted in an enhancement for sophisticated laundering as to those co-defendants was reasonably foreseeable to defendant Mathias and thus, conduct for which he should be likewise be held accountable).   In determining relevant conduct a  defendant is responsible for "all acts and omissions committed, aided, abetted,...or willfully caused by defendant" and in the case of "a jointly undertaken criminal activity..., all reasonably foreseeable acts and admissions of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction,..." USSG §1B1.3(a)(1)(B).  Guideline application notes explain: "In determining the scope of the criminal activity that the defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement), the court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." USSG §1B1.3,cmt. n.2.

Defendant Shikanda participated and aided and abetted his co-defendants and Chegge-Kraszeski in transferring proceeds of an SUA to multiple offshore accounts to four different banks in Kenya held in the name of fictitious entities. This activity constitutes sophisticated laundering. Defendant Shikanda also received proceeds of the underlying offense in the form of cash which had been laundered though multiple layers of laundering transactions. Namely, Shikanda received cash from co-defendant Gunga which

occurred as follows:  On March 31, 2009 Chegge-Kraszeski and co-defendant Ochenge withdrew funds from the Deloitte account to purchase a cashier's check made payable to "Christina Clay" in the amount of $70,082.26.   That same day the two exchanged that cashier's check for two cashier's checks including one in the amount of $42,517.55 made payable to Albert E. Gunga purportedly for equipment. Gunga deposited these funds into a bank account and withdrew the amounts in various cash and cashier check transactions and provided part of the proceeds to Shikanda.  While Shikanda may not have known all of the details of how he acquired these funds, it was reasonably foreseeable to him that these layering transactions would occur in order for him and his co-conspirators to receive payment for their participation in the laundering scheme. Thus, defendant Shikanda knowingly participated in and undertook activities involving a sophisticated money laundering offense which warrants application of §2S1.1(b)(3).

B.   Value of the Laundered Funds

    Following amendments to §2S1.1 in 2001, the base offense level for money laundering offenses is determined with reference to the underlying offense from which the laundered funds were derived or by reference to the chart in §2B1.1 corresponding to the value of the laundered funds, if the defendant is not criminally responsible for the underlying offense. The guidelines provide guidance for determining the value of the laundered funds by defining "laundered

6

funds" as "the property, funds or monetary instrument involved in the transaction, financial transaction, monetary transaction, transportation, transfer, or transmission in violation of 18 U.S.C. § 1956 or § 1957.  USSG §2S1.1, application n. 1.

In the instant case, the value of the laundered funds has been determined to be $919,916, the amount of funds fraudulently diverted from the State of West Virginia and laundered from the fraudulent Deloitte bank account at TCF Bank between March 26 and April 1, 2009.  This value derives primarily from funds wired in nine separate transactions to business accounts in the name of "Accenture Global Enterprises Limited" and SRI International Limited" held at four separate bank accounts in Nairobi, Kenya in the total amount of $773,223. The remaining funds were laundering as well through other means including the negotiation of checks for cash and the purchase and exchange of cashier's checks as detailed in the presentence report. See PSR ¶¶53-64.

As previously stated, in determining relevant conduct Shikanda is responsible for all acts which he committed or aided and abetted as well as acts of co-conspirators reasonably foreseeable to him and undertaken as a part of a joint  criminal activity.   USSG §1B1.3(a)(1)(B); see, e.g. United States v. Turbull, No. 09-4320, 2010 WL 2725604 (4th Cir. July 2, 2010) (unpublished)(applied in calculating loss under USSG §2B1.1); United States v. Galdos, 308 F.App'x 346, 362 (11th Cir. 2009)(unpublished)(applying USSG

§1B1.3(a)(1)(B) to determine value of laundered funds applicable to a particular defendant). Defendant Shikanda became involved in the offense because he knew an employee at TCF Bank and could facilitate the wire transfers to Kenya.  He introduced co-defendant Chegge-Kraszeski to this employee who was a branch manager prior to any transfers of money occurring.  The defendants believed that the introduction would deflect suspicion of such large wire transactions to Kenya and make it more likely that the fraud would not be detected. Shikanda admittedly accompanied Chegge-Kraszeski and Ochenge on March 26 and 30 to TCF Bank and, as shown in video surveillance, was present during the wire transfers. On March 26, 2009 there were two foreign wire transfers in the amounts of $92,410 and $89,716.  On March 30, 2009 there were three additional wire transfers in the amounts of $95,994; $95,818, and $93,556. Shikanda denies any involvement in the four additional wires occurring on April 1, 2009.  Nevertheless, defendant Shikanda is not only responsible for the transfers of funds made when he was present, but also those made when he was not present as those transfers were clearly foreseeable to him and a part of the jointly undertaken criminal activity.

While perhaps not being fully aware of the precise nature of the underlying offense from which the laundered funds were derived, Shikanda knew the transactions were fraudulent, knew the large dollar amounts involved in the transfers, knew Chegge-Kraszeski was

using a phony name and fraudulent South African Passport, and knew

the fraudulent account had $919,916 in funds.  He agreed to make an

introduction at the bank so these funds could be withdrawn and knew

large transfers of money were going to Kenya. He clearly knew and

it was foreseeable to him that Chegge-Kraszeski and Ochenge would

return to the bank to wire the additional funds.  The evidence

further shows that Shikanda received proceeds of the fraud which

were laundered through cashiers checks and knew that at least

Ochenge was receiving proceeds of the fraud through cash. As a

result, the finding that defendant is responsible for $919,916 of

laundered funds is supported by a preponderance of the evidence.

D.   Variance and 18 United States Code Section 3553(a) Factors

Defendant argues that the guideline set forth in USSG §2S1.1

are unduly harsh and should not punish a defendant engaging in money

laundering transaction with fraud proceeds more harshly than those

engaging in the underlying offense itself.  Contrary to defendant

arguments, the guidelines are intended to and do recognize that

enhanced punishment is warranted for money laundering.  Moreover,

Shikanda's guidelines were calculated using the value of the

laundered funds not the full amount of the underlying fraud.  If he

were accountable for the fraud his guidelines would not be limited

to this loss calculation and would include other enhancements

regarding the offense characteristics.  It is simply incorrect to

state that he would have been subject to a lower sentence had he

actually participated in the theft. Moreover, his sentencing guidelines, even taking into account his criminal history which is more significant than that of the other participants, provides a lower guideline range reflecting his relative culpability among his co-defendants.  A variance is not warranted.

Notably, the defendant laundered funds from an offense which was an extensive, international fraud scheme that preyed upon public entities and public funds.  Defendant Shikanda participated in moving hundreds of thousands of dollars outside the United States and beyond the reach of law enforcement. The guidelines as calculated provide reasonable sentencing range that reflects the seriousness of the offense, promotes respect for the law, and provides just  punishment for defendant Shikanda's conduct.

<u>Conclusion</u>

Wherefore, the United States submits this memorandum for the Court's consideration and requests the Court to adopt the findings and conclusions in the presentence report, including the calculation

10

of the advisory sentencing guideline range and to provide a
deterrence to others who might be inclined to engage in similar
criminal conduct.

                         Respectfully submitted,

                         R. BOOTH GOODWIN II
                         United States Attorney


                   By:
                         /s/SUSAN M. ROBINSON
                         SUSAN M. ROBINSON
                         Assistant U.S. Attorney
                         WV Bar No.  5169
                         Assistant U.S. Attorney
                         P.O. Box 1713
                         Charleston, WV  25326
                         Telephone:  (304) 345-2200
                         Fax:  (304) 347-5706
                         E-mail:  susan.robinson3@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

It is hereby certified that the foregoing "Sentencing Memorandum" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this the 18th day of August 2010, to:

        Gary A. Collias, Esquire
        P.O. Box 70007
        Charleston, WV  25301-0007


                        /s/SUSAN M. ROBINSON
                        SUSAN M. ROBINSON
                        Assistant U.S. Attorney
                        WV Bar No.  5169
                        Assistant U.S. Attorney
                        P.O. Box 1713
                        Charleston, WV  25326
                        Telephone:  (304) 345-2200
                        Fax:  (304) 347-5706
                        E-mail:  susan.robinson3@usdoj.gov